1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                        **WESTERN DIVISION**

11

12  DON EVERETT TEN NAPEL,              )    No. CV 17-3857-PLA
                                        )
13              Plaintiff,              )    **MEMORANDUM OPINION AND ORDER**
                                        )
14        v.                            )
                                        )
15  NANCY BERRYHILL, ACTING             )
    COMMISSIONER OF SOCIAL              )
16  SECURITY ADMINISTRATION,            )
                                        )
17              Defendant.              )
    _____)
18

19                             **I.**

20                        **PROCEEDINGS**

21        Plaintiff filed this action on May 23, 2017, seeking review of the Commissioner's denial of

22  his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

23  payments.  The parties filed Consents to proceed before a Magistrate Judge on May 25, 2017,

24  and June 9, 2017.  Pursuant to the Court's Order, the parties filed a Joint Statement (alternatively

25  "JS") on January 25, 2018, that addresses their positions concerning the disputed issues in the

26  case.  The Court has taken the Joint Statement under submission without oral argument.

27  /

28  /

## II.

## BACKGROUND

Plaintiff was born on July 26, 1962. [Administrative Record ("AR") at 32, 232, 234.] He has past relevant work experience in the composite job of surgical technician and medical assistant. [AR at 32, 74, 75.]

On December 28, 2012, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since June 4, 2012. [AR at 21, 232-33, 234-39.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 21, 195-96.] A hearing was held on August 14, 2015, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 41-89.] A vocational expert ("VE") also testified. [AR at 71-88.] On September 14, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from June 4, 2012, the alleged onset date, through September 14, 2015, the date of the decision. [AR at 21-35.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 15-16.] When the Appeals Council denied plaintiff's request for review on March 21, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where

evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work

activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. Lounsbury, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 4, 2012, the alleged onset date.[1] [AR at 23.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease; affective disorder; seizure disorder; and anxiety. [Id.] The ALJ also determined that plaintiff's past alcohol abuse is not material to the determination of disability. [AR at 25.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the

---

[1]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2012. [AR at 23.]

impairments in the Listing. [AR at 25.] The ALJ further found that plaintiff retained the residual

functional capacity ("RFC")[2] to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and

416.967(c),[3] as follows:

> [Plaintiff] cannot be around unprotected heights, moving mechanical parts or operate a mechanical vehicle. [He] cannot climb ladders, ropes and scaffolds. [He] was limited to performing simple, routine tasks with simple work related decisions and occasional contact with supervisors, and incidental contact with coworkers and the public and few changes in the routine work setting defined as the work being generally the same every day. [Plaintiff] cannot perform work at a production rate pace.

[AR at 27.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded

that plaintiff is unable to perform his past relevant work in the composite job of surgical technician

and medical assistant. [AR at 32, 76-77.] At step five, based on plaintiff's RFC, vocational factors,

and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the

national economy that plaintiff can perform, including work as a "truck washer" (Dictionary of

Occupational Titles ("DOT") No. 529.687-018), "furniture cleaner" (DOT No. 709.687-014), and

"equipment cleaner" (DOT No. 381.687-022). [AR at 33-34, 77, 78-79.] Accordingly, the ALJ

determined that plaintiff was not disabled at any time from the alleged onset date of June 4, 2012,

through September 14, 2015, the date of the decision. [AR at 34.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) rejected the opinions of plaintiff's treating

psychiatrist, Lucy Liao, M.D., regarding plaintiff's mental limitations; (2) rejected plaintiff's

---

[2]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3]  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

subjective symptom testimony; and (3) found that plaintiff can perform jobs existing in significant numbers in the national economy. [JS at 3.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A.    MEDICAL OPINIONS

### 1.    Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[4] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2007)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d

---

[4]    The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

at 1198).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Id. (citing Ryan, 528 F.3d at 1198).  When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician.  Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct."  Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling ("SSR")[5] 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations).  Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

/

/

---

[5]   "SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

## 2.    Dr. Liao

On September 4, 2013, Dr. Liao completed a very detailed Mental Disorder Questionnaire Form regarding plaintiff's mental health ("Form"). [AR at 537-42.] In the Form, Dr. Liao indicated that she had first examined plaintiff on November 19, 2012, and had seen him "1-2x/month" since that time. [AR at 541.] In the Form, among other things, Dr. Liao reported the following: plaintiff first experienced depressive symptoms in 1982, including a lack of motivation, anger, social withdrawal, and a desire not to be around other people, as well as the use of alcohol as a coping mechanism; he "isolates to the extreme and cannot establish or maintain contact during employment oriented activities"; his isolation and paranoia "markedly impact his ability to engage in any social or vocational activities"; he has an unrealistic fear for his own safety; some of his more severe symptoms decreased after he began his psychiatric treatment and medication regime, but he continues "to isolate whenever possible and expresses belief that persons or people are watching him"; he exhibits marked anxiety "and repetition of his belief in persecution or of persons talking about him in community settings"; he "manifests severe isolation and feelings of persecution that have resulted in his homelessness"; his "reactions to any close personal relationships or even an effective therapeutic alliance are hindered" by his fear and isolation behaviors and he "remains aloof from close exploration by his case manager"; he "personalizes many stimuli as directed at him and responds aggressively to any of these perceptions," which "would surely impact [him] in any work environment as it has in his current communal living situation"; he completes household chores "but to an extreme compulsive level" and is "exacting and demanding in an overly obsessive manner"; he demands that his peers adhere to his strict perception of standards and is "not open to understanding of the limitations of his peers"; he presents in a "grandiose manner" and describes himself as an expert in his field "despite the evidence of his becoming unemployed"; his anxiety prevents social interaction; he is "rigid and uncompromising" in his style of interaction, his grandiose and exacting nature makes social contact difficult, his belief that others are watching him "also contributes to difficult social engagement" and his expectations are concrete and inflexible; his "expectations that others need to concede to him in some manner, further affect[] his ability to engage in healthy relationships";

he endorses paranoid delusions "but is generally unspecific about how or why this is happening"; he responds to all questions in a compulsive manner with many hand gestures; he describes memory lapses involving his work activities and has difficulty remembering the basic chores of his job as a surgical assistant; he manages many activities of daily living "well enough to survive in an environment where he is provided structure and guidance" but when he is allowed to "direct his own actions his anxiety and paranoia can result in extreme aggression and defensive behaviors"; and his "symptoms continue to impact his ability to function or to obtain gainful employment." [AR at 537-41.] Dr. Liao noted that plaintiff participates voluntarily and "strenuously" in his treatment "but remains in a guarded condition," and he "is likely to worsen" without ongoing, consistent and supportive services. [AR at 541.] She opined that his condition "is expected to remain for the foreseeable future." [Id.]

On January 15, 2014, Dr. Liao completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" ("Statement"). [AR at 667-69.] In the Statement, Dr. Liao indicated that plaintiff was moderately[6] limited in his ability to understand, remember, and carry out detailed instructions, and to make simple work-related decisions. [AR at 667.] She noted only "slight" limitation in his ability to understand, remember, and carry out short, simple instructions. [Id.] She stated that her findings were supported by plaintiff's diagnosis of Major Depressive Disorder with Psychotic Features, and that his symptoms include impaired sleep, poor energy, and poor concentration that affects his ability to understand/remember/carry out instructions, especially when more detailed. [Id.] She also indicated he was moderately limited in his ability to interact appropriately with the public, supervisors, and coworkers, and markedly limited in his ability to respond appropriately to work pressure in a usual work setting, and to changes in a routine work setting. [AR at 668.] She stated that these findings were supported by plaintiff's depressive symptoms, which present as irritability and low frustration tolerance; poor sleep; poor attention

---

[6]    For purposes of completing the Form, "moderate" is defined as there being "moderate limitations in this area but the individual is still able to function satisfactorily"; "marked" is defined as there being "serious limitation in this area. The ability to function is severely limited but not precluded." [AR at 667.]

span; and poor energy level. [Id.] She further noted that he "can have significant interpersonal issues due to his mood disturbance," and that he "currently has significant trouble adjusting and dealing with changes at the program due to depressive symptoms." [Id.]

On June 3, 2015, Dr. Liao completed another Medical Source Statement [AR at 692-94], in which she assessed the same limitations as in January 15, 2014, except that she now indicated that plaintiff had deteriorated such that he would have marked limitations in his ability to interact appropriately with supervisors. [AR at 693.] She also indicated that the severity of his symptoms "can at times affect his judgment when it comes to decision making." [AR at 692.]

The ALJ gave "this opinion"[7] of Dr. Liao "partial weight":

[Plaintiff] does have limitations in concentration, persistence and pace but is not as limited in social interaction as Dr. Liao opined. [His] medical records showed that he was stable with treatment, as in his examinations, he had an euthymic mood, linear thoughts and no suicidal thoughts or other hallucinations. He was calm and had normal speech. [He] was also well groomed, calm, cooperative and made good eye contact.[8] Dr. Liao also reported in her treatment notes that [plaintiff's] symptoms were stable with treatment. Therefore, [plaintiff] does have limitations in concentration, persistence and pace, but not as severe as Dr. Liao indicated.

[AR at 30 (citing AR at 548, 549, 551, 552, 610, 671, 672, 673, 687).] The ALJ instead gave the May 9, 2015, opinion of clinical psychologist Ahmad R. Riahinehad, Ed.S., Ph.D, the consultative examiner, "significant weight," finding it consistent with plaintiff's medical records that showed he was stable on medication "and was cooperative, pleasant and goal oriented." [Id. (citing AR at 660-65).] Dr. Riahinehad opined that plaintiff was able to remember, understand, and carry out simple and repetitive instructions and would have moderate difficulty with complex and detailed instructions; had slightly slow pace and could have problems in fast-paced positions; and "was able to relate with others and accept supervision." [Id. (citing AR at 665).] The ALJ also suggested that Dr. Riahinehad's opinion was consistent with the fact that plaintiff was "able to

_____

7    It is unclear whether the ALJ was referring only to the June 2015 opinion, or whether he was referring to all of Dr. Liao's opinions. For purposes of this discussion, the Court assumes the latter.

8    The Court sees one record cited to by the ALJ that reflects "good" eye contact [see AR at 687]; indeed, most of plaintiff's records reflected "fair" or "fair to poor" eye contact. [See, e.g., AR at 545, 546, 548, 549, 551, 552, 554, 671, 672, 679, 683, 684, 685.]

10

attend group meetings and go on walks with others," go shopping, volunteer occasionally in the kitchen at his treatment center, and "engage in a relationship with another person." [Id. (citing hearing testimony; AR at 548, 549, 551, 552, 610).] The ALJ similarly gave "great weight" to the December 2013 opinion of the State agency psychologist at the reconsideration level [AR at 143-54], for much the same reasons. [See AR at 31 (noting that the State agency psychologist found limitations in social functioning and concentration, but the medical record also reflected that "with treatment, [plaintiff] was able to manage his symptoms as he was cooperative and pleasant in his examinations and made good eye contact . . . , [and] also was able to attend group therapy sessions and interact with others during walks.").] The ALJ concluded that -- viewing the evidence in the light most favorable to plaintiff -- plaintiff "should not have production pace requirements at work based on his allegations of difficulty concentrating as well as difficulties in social interaction based on his allegations of anxiety and paranoia around others." [Id.]

Plaintiff contends that the ALJ did not provide specific and legitimate reasons for discounting the opinions of Dr. Liao, who was plaintiff's treating psychiatrist for almost three years as of the time of the hearing. [JS at 7 (citing AR at 606-39, 670-90).] He submits that the ALJ also "mischaracterized the extent and duration of Plaintiff's daily activities and interactions with other people, and failed to offer any explanation how any of Plaintiff's limited daily activities and social interactions contradicted Dr. Liao's opinions regarding [plaintiff's] mental capacity to perform work-related activities."[9] [JS at 9.]

_____

[9] The Court notes that the ALJ did not rely on plaintiff's activities of daily living to discount Dr. Liao's opinions; he only relied on plaintiff's activities to discount plaintiff's subjective symptom testimony. Notwithstanding the foregoing, an ALJ may reject a medical opinion regarding a claimant's mental health because the claimant's activities of daily life contradict it, but only if substantial evidence supports that conclusion. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that inconsistency between doctor's opinion and claimant's "maintaining a household and raising two young children, with no significant assistance from her ex husband" supported discounting the doctor's opinion). The record must provide details about the nature, extent, and frequency of the activities for them to "constitute 'substantial evidence' inconsistent with [an examining physician's] informed opinion." Trevizo, 871 F.3d at 666. In this case, the evidence regarding plaintiff's *limitations* in his limited social interactions far outweighs the ALJ's findings. For instance, the ALJ found that plaintiff "was able to attend group meetings," but plaintiff
(continued...)

Defendant argues that the ALJ noted that with treatment plaintiff showed an improvement in his mental state, "with records showing Plaintiff as well groomed, cooperative and making good eye contact," and that he was "stable with treatment." [JS at 11 (citing AR at 30, 58, 549, 551, 552, 610, 671-73, 687).] According to defendant, plaintiff's mental status examinations "show him as well-groomed, cooperative and with logical thinking," and other treatment providers "did not observe any obvious signs of mental illness or anti-social behavior."[10] [Id. (citing AR at 697, 701, 708, 711).] Defendant further notes that while "Dr. Liao's check the box[11] function reports indicate serious limitations in Plaintiff's ability to function in a work setting, the ALJ pointed to evidence in the record that contradicts the opinion in ways that show Plaintiff's symptoms and limitations were not as dire as indicated." [JS at 13 (citing AR at 30).] Thus, although plaintiff "had limitations in his ability to work, regarding pace, concentration and social interactions," the ALJ determined that plaintiff "is able to perform within the modest demands of his [RFC], which properly limits [him] to

_____

[9](...continued)
testified he does not contribute and believes that the 45 minute to one hour meeting is "about as much as [he] can tolerate" [AR at 52, 61]; that he goes on walks with a "walking group" -- but plaintiff testified that he does not talk to the others during the walk [id.]; that he occasionally volunteered in the kitchen at his treatment center -- doing dishes [AR at 54]; and, that although plaintiff had a relationship "with another person" in the past, he testified that it was a "long-distance relationship" that consisted of re-contacting someone from his past, but "nothing ever[] came of it" and it did not work out. [AR at 63-64.]

[10]    To the extent defendant suggests that the ALJ properly discounted Dr. Liao's opinions because other treating providers did not observe signs of mental illness, a reason that was *not* given by the ALJ with respect to discounting Dr. Liao's opinions, "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225-26 (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). The Court will not consider reasons for rejecting Dr. Liao's opinions that were not given by the ALJ in the decision. See Trevizo, 871 F.3d at 677 & nn. 2, 4 (citation omitted).

[11]    Although defendant impliedly disparages these forms as "check the box" forms, the function reports completed by Dr. Liao are the Agency's own "approved" forms. [See AR at 667, 692 (denoting the forms completed by Dr. Liao to be Social Security Administration Office of Disability Adjudication and Review form number HA-1152-U3, replacing SSA-1152, as approved by OMB No. 0960-0650).]

unskilled work, limited social interactions and the types of jobs having little changes in the work setting or routine, and little pace or production demands." [JS at 13-14 (citing AR at 27, 30, 33-34).]

The ALJ's reasons for discounting Dr. Liao's opinions, rather than being specific and legitimate, are confusing at best. While first acknowledging that plaintiff has limitations in concentration, persistence and pace, the ALJ then states: "but" plaintiff is not as limited in social interaction as Dr. Liao opined. [AR at 30.] He then comments on a few medical records that purportedly reflect that plaintiff was calm and cooperative, or had a euthymic mood, linear thoughts, no suicidal ideations during examinations, and was "stable" with treatment -- none of which provides any support for the ALJ's previous statement regarding plaintiff's limitations in social interactions, let alone with concentration, persistence or pace. [Id.] After discussing these record findings relating to plaintiff's mood and affect, the ALJ concludes with another non sequitur (and without support), stating that "therefore," plaintiff's limitations in concentration, persistence or pace are not as severe as indicated by Dr. Liao. [Id.]

Even if the few records cited to by the ALJ reflect good grooming, normal speech, calm behavior, or that plaintiff was "stable with treatment" at a specific treatment visit, it is clear after reviewing the records that the ALJ did little more than pick and choose among the records for these examples to support his decision. And, even within the same few records cited to by the ALJ, the treatment notes reflect that -- despite plaintiff's good grooming, normal speech, and calm behavior -- he was experiencing, among other things, low energy, "fair" eye contact at best, restricted affect, and uncontrolled anxiety:

- March 13, 2013, Medication Log, Ex. 4F at 17 [AR at 552]: energy is average; fair to poor eye contact; mildly reduced reactivity and mildly restricted range of affect; and fair to good focus;

- April 3, 2013, Medication Log, Ex. 4F at 16 [AR at 551]: increased anxiety; fair to poor eye contact; fair to good focus; appeared to not comprehend some concepts; and doing well on Effexor except he complains of anxiety, not well controlled;

- May 1, 2013, Medication Log, Ex. 4F at 14 [AR at 549]: mood is up and down and energy

is low; fair to poor eye contact; mildly reduced reactivity and mildly restricted range of affect; fair to good focus; and appeared to not comprehend some concepts;

- June 5, 2013, Medication Log, Ex. 4F at 13 [AR at 548]: plaintiff "reports more anxiety lately"; he is stable with "some current stressor being not getting along with some people at the shelter"; fair to poor eye contact; mildly reduced reactivity and mildly constricted range of affect; and appeared to not comprehend some concepts;

- December 11, 2013, Medication Log, Ex. 10F at 18 [AR at 687]: plaintiff moved into a new apartment and is feeling lonely, which is contributing to his mood dysphoria; poor energy due to insomnia; affect constricted; insight and judgment impaired; and medication only "mildly effective" in anxiety control, but ineffective in helping with sleep issues;

- March 25, 2015, Ex. 10F at 4 [AR at 673]: plaintiff feels more calm and does not pace while waiting for bus stops or clinic visits; he has noticed no "change in anxiety in social situations and still avoids"; fair eye contact; he reported his mood as "I'm stable"; and insight and judgment impaired;

- April 22, 2015, Medication Log, Ex. 10F at 3 [AR at 672]: "has been feeling 'alright'"; "feels lessening of his anxiety in most situations such as on the bus, dealing with neighbors' situations; although still has anxiety and irritability while in groups"; still avoiding social situations and crowds; fair response to medications; fair compliance with medications; fair eye contact; mood reported as "I'm stable"; affect constricted; insight and judgment impaired; and therapist recommended for cognitive behavioral therapy work targeting claustrophobic tendencies, mild OCD traits, and social anxiety; and

- May 20, 2015, Medication Log, Ex. 10F at 2 [AR at 671]: fair response to medications; fair compliance with medications; fair eye contact; mood reported as "I'm OK"; affect constricted; insight and judgment impaired; and therapist recommended for cognitive behavioral therapy work targeting claustrophobic tendencies, mild OCD traits, and social anxiety.

Moreover, a review of even just a few of the records the ALJ did *not* cite to during the same time periods reflects the following, also showing that even when plaintiff's mood was reported to be

"stable," he continued to experience issues with depression, anxiety, low motivation, irritability, and insomnia, among other things:

- December 12, 2012, Progress Notes [AR at 565, 566, 567]: still has some depression but is better with medications; "extremely anxious today"; and highly anxious and feeling depressed;

- December 17, 2012, Medication Log [AR at 555]: "anxiety & depression are still there"; energy varies throughout the day; low appetite; low motivation; tearful the day before; increased feelings of worthlessness; stable but sad mood; and continues being depressed and anxious despite treatment;

- January 17, 2013, Medication Log [AR at 554]: increased anxiety, easily irritable, and positive for depression; had suicidal thoughts in the prior week; and fair to poor eye contact;

- July 10, 2013, Medication Log [AR at 546]: response to medication and compliance fair; worsening mood; insomnia; suicidal ideations with intermittent plans; doing fair; fair eye contact; and affect mildly constrained;

- August 14, 2013, Medication Log [AR at 545]: expressed frustration when his expectations are not met; complains of anxiety; reports his mood as "still anxious"; fair eye contact; affect constricted; and relatively stable mood but with residual anxiety due to persistent psychosocial stressors;

- January 15, 2014, Medication Log [AR at 686]: still has insomnia; experiencing teeth grinding; sleeping only four hours a night; poor energy level; impaired concentration during the day; still has anxiety; reported that he feels anxious; fair eye contact; constricted affect; and impaired insight and judgment;

- February 5, 2014, Medication Log [AR at 685]: reported feeling depressed due to a recent break up; fair eye contact; and worsening sleep and mood;

- March 12, 2014, Medication Log [AR at 684]: persistent anxiety and irritability; anxiety while attending group sessions, community meetings at his apartment, and while waiting for the bus; fair eye contact; feels "anxious and . . . still can't sleep"; and constricted affect;

- April 2, 2014, Medication Log [AR at 683]:  mood stable; no significant changes in anxiety; fair eye contact; and impaired insight and judgment;

- June 25, 2014, Medication Log [AR at 680]:  worsening mood; decreased motivation; worsening anxiety and irritability; fair eye contact; constricted affect; and reported mood as "I'm feeling bad";

- July 23, 2014, Medication Log [AR at 679]: persistent insomnia; fair eye contact; reported "I'm ok, but still get[] irritated"; and improved mood and anxiety on higher dose of Cymbalta; and

- August 20, 2014, Medication Log [AR at 678]:  residual depressive symptoms; fair eye contact; constricted affect; and appetite poor.

Thus, the treatment notes mentioned above and others in the record indicated some ups and downs in plaintiff's mental health condition, and also consistently revealed that plaintiff had difficulties concentrating, focusing and maintaining attention, and with social interactions.  See Ghanim, 763 F.3d at 1161 (treatment notes that consistently reflected recurring symptoms did not support the ALJ's conclusion that the treating physician's opinion was inconsistent with treatment notes).  An ALJ's rejection of a treating physician's opinion for inconsistencies between the treatment notes and the physician's opinion is not a specific and legitimate reason to reject that opinion where -- as here -- no interpretation of the inconsistencies is proffered.  Trevizo, 871 F.3d at 666-67.

Additionally, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings.  See, e.g., Holohan, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).  As the Ninth Circuit has explained, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison, 759 F.3d at 1017 (citing Holohan, 246 F.3d at 1205); see also Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011) (citations omitted) ("There can be a great distance between a patient who responds to treatment and one

who is able to enter the workforce, and that difference is borne out in [the] treatment notes.  Those notes show that although [plaintiff] had improved with treatment, []he nevertheless continued to frequently experience bouts of crying and feelings of paranoia.  The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits.").  Thus, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms." Garrison, 759 F.3d at 1017 (citing Ryan, 528 F.3d at 1200-01); see also Holohan, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace.").

   As reflected above, the ALJ in this case "pointed" only to the portions of the medical records that bolstered his findings, specifically, those findings relating to such things as plaintiff's grooming, generally calm and cooperative demeanor on examination, normal speech, and the fact that he typically had linear thought processes without suicidal thoughts or hallucinations.  Additionally, in giving greater weight to the one-time consultative examiner's opinions and the non-examining reviewing psychologist's opinion, over those of the treating psychiatrist, the ALJ failed to consider such factors as the nature, extent, and length of plaintiff's doctor-patient working relationship with Dr. Liao, the frequency of his treatment visits with Dr. Liao, and the fact that Dr. Liao is a psychiatrist, and Dr. Riahinehad, while highly qualified as an educational specialist and Ph.D. clinical psychologist, had no medical records available for his review, and his entire opinion was based on his one-time evaluation and observation of plaintiff on May 9, 2015.  [AR at 661.] Indeed, based on no observable evidence and contrary to the great weight of evidence in the record, Dr. Riahinehad determined that plaintiff "is able to relate with others and accept supervision" [AR at 665], while also noting that plaintiff's concentration and attention span was "variable," that he had "some" insight into his condition, and that his judgment was "fair."  [AR at 662.]  Similarly, the State agency psychologist's review in December 2013, was based primarily on Dr. Liao's September 2013 Form, without the benefit of Dr. Liao's treatment notes through mid-

2015 and her two additional mental health reports.

Based on plaintiff's longitudinal mental health history and treatment with Dr. Liao -- and considering the fact that Dr. Riahinehad and the State agency psychologist did not have the benefit of plaintiff's longitudinal mental health records -- the Court cannot conclude that under the circumstances here the reasons for the weight given to Dr. Liao's opinions regarding plaintiff's limitations in attention, concentration or pace, and moderate to marked limitations in his social interactions both inside and outside of the work environment, in favor of Dr. Riahinehad's "snap-shot" opinion, and the reviewing psychologist's December 2013 opinion, were specific and legitimate and supported by substantial evidence. Remand is warranted on this issue.[12]

## B.   SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff provided evidence that he is unable to work due to depression, anxiety, problems with focus and concentration, lack of energy, lack of motivation, and "paranoia" around other people. [JS at 16 (citations omitted).] He generally stated that he "doesn't like people, feels uncomfortable around people, can't be around people for any long period of time, and has difficulties with concentration and focus with activities" such as communication, reading, and watching television; he attends group therapy and walking groups, but does not talk or otherwise participate in these groups; when he describes his symptoms as "stable," he generally means that his symptoms are not getting any worse or any better; he goes food shopping; he occasionally volunteers by washing dishes and helping in the kitchen at his treatment center; he needs reminders to perform personal hygiene and other tasks when he is depressed; he experiences anxiety when he has to travel by bus; he has few friends; and he had a long-distance relationship with someone whom he had grown up with, and "started communicating with, but nothing ever[] came of it." [JS at 16-17; AR at 47-70.]

---

[12]   In his third issue, plaintiff contends that because the ALJ did not properly credit Dr. Liao's opinions and plaintiff's subjective symptom testimony, the ALJ's hypothetical to the VE did not adequately reflect all of plaintiff's mental limitations. [JS at 28.] Because the matter is being remanded on this first issue, the Court will not consider plaintiff's third issue herein.

The ALJ discounted plaintiff's subjective symptom testimony based on a number of reasons[13]: (1) in his examinations, plaintiff "was consistently oriented, had normal insight and an appropriate mood and affect"[14]; he showed improvement with mental health treatment and the records reflected "euthymic mood, linear thoughts, and no suicidal thoughts or other hallucinations"; he was calm and had normal speech, and in his "most recent examination" he was "well groomed, calm, cooperative and made good eye contact"; he had linear thoughts and was goal directed; he was cooperative and pleasant in his examinations and made "good" eye contact; (2) plaintiff reported his anxiety symptoms were decreasing; (3) Dr. Riahinehad noted plaintiff arrived on time, took the bus, was adequately dressed, denied drug and alcohol use, was oriented to person, place and time, and understood the evaluation, and had fair immediate memory; (4) plaintiff provided inconsistent information about his volunteering and his alleged back surgery; and (5) his activities of daily living support a finding that he can perform "the above residual functional capacity," and the "inconsistency between the alleged limitations and the admitted activities" supports the RFC. [AR at 29.]

Plaintiff argues that none of the reasons provided by the ALJ for discounting his subjective symptom testimony is specific, clear and convincing, and defendant counters those arguments. Because the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, the ALJ must also reconsider on remand, pursuant to SSR 16-3p,[15] plaintiff's subjective symptom testimony and,

---

[13] Many of these "reasons" have already been discussed -- and rejected -- in connection with plaintiff's first issue.

[14] As outlined in the prior issue, most of plaintiff's records actually reflected impaired insight and judgment.

[15] The Ninth Circuit in Trevizo noted that SSR 16-3p, which went into effect on March 28, 2016, "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 687 n.5 (citing SSR 16-3p). Thus, SSR 16-3p shall apply on remand.

based on his reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony if warranted. See Trevizo, 871 F.3d at 678 n.5; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir. 2015) (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Liao, the ALJ on remand shall reassess the medical evidence of record and must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Next, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, the ALJ shall

reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[16] See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. 2017).

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  April 9, 2018

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[16]    Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.